**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-3094

JAVIER NAVA HERNANDEZ,

      Petitioner-Plaintiff,

v.

JUAN BALTAZAR, Warden, Aurora ICE Processing Center, in his official capacity,

ROBERT GAUDIAN, Director of the Denver Field Office for U.S. Immigration and Customs Enforcement, in his official capacity;

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity;

TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity;

PAMELA BONDI, Attorney General of the United States, in her official capacity;

      Respondents-Defendants.

---

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

---

Petitioner-Plaintiff Javier Nava Hernandez ("Plaintiff") moves for a temporary restraining order against Respondents-Defendants ("Defendants") pursuant to Rule 65 and the All Writs Act. Plaintiff is a civil immigration detainee at the Immigration and Customs Enforcement (ICE) Denver Contract Detention Facility in Aurora, Colorado ("Aurora Facility"). Defendants deny Plaintiff release on bond under their erroneous, new interpretation of the Immigration and Nationality Act ("INA"). The Court should order Plaintiff's release (or that Defendants provide a bond hearing within 7 days). The Court should further enjoin Defendants from transferring Plaintiff outside of the Court's jurisdiction.

## I.    Introduction

For nearly thirty years noncitizens that entered the country without inspection and who Defendants later detained for removal proceedings were bond eligible. Defendants' radical change in course violates the statute. 8 U.S.C. § 1226 provides noncitizens "arrested and detained" during removal proceedings "may [be] release[d] on a bond …" absent certain criminal contacts. 8 U.S.C. §§ 1226(a), (c). The Supreme Court explained § 1226 is the "default" detention provision, authorizing detaining people "already in the country," explicitly distinguishing them from "[noncitizens] seeking admission into the country" who "shall" be detained under § 1225. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Defendants now insist that 8 U.S.C. § 1225 governs Plaintiff's detention.

Under Defendants' new theory, despite having lived in the country for nearly two decades, Plaintiff is now "seeking admission" to the U.S. and thus subject to mandatory detention under § 1225(b)(2). This is a sharp contrast to Defendants' decades-long practice where § 1225 applied only "at the Nation's borders and ports of entry." *Jennings*, 583 U.S. at 287. It is also wrong;

1

Federal courts overwhelmingly agree.[1] "The language of … § 1226 is … clear[]. … [it] applies to [noncitizens] already present in the [U.S.] … [And] permits … release on bond." *Jennings*, 583 U.S. at 303.

---

[1] *Rodriguez-Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, *8 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp.3d ---, 2025 WL 2084238, *9 (D. Mass. July 24, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025); *Escalante v. Bondi*, No. 25-cv-3051, 2025 WL 2212104 (D. Minn. July 31, 2025) (adopted *sub nom O.E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 4, 2025)); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D. N.Y. Aug. 8, 2025); *de Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) (adopted without objection at 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Aquilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug 15, 2025); *Romero v. Hyde*, --- F.Supp.3d ----, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, Doc. 20 (D. Md. Aug. 24, 2025); *Benitez v. Noem*, No. 5:25-cv-02190, Doc. 11 (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump*, No. 3:25-dcv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F.Supp.3d ---, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Lopez-Campos v. Raycraft*, --- F.Supp.3d --- , 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Palma Perez v. Berg*, --- F.Supp.3d --- , 2025 WL 2531566 (D. Neb. Sept. 3, 2025); *Cortes Fernandez v. Lyons*, No. 8:25-cv-506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Carmona-Lorenzo v. Trump*, No. 4:25-cv-3172, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110 (N.D. Cal Sept. 3, 2025); *Vasquez Garcia et al. v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Sampiao v. Hyde*, --- F.Supp.3d ---, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Cuevas Guzman v. Andrews*, No. 1:25-cv-01015-KES-SKO (HC), 2025 WL 2617256, (E.D. Cal. Sept. 9, 2025); *Hinestroza v. Kaiser*, No. 25-cv-07559-JD, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025; *Jimenez v. FCI Berlin, Warden et al.*, --- F.Supp.3d ---, 2025 WL 2639390 (D.N.H. Sept. 9, 2025); *Salcedo Aceros v. Kaiser et al.*, No 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Ca. Sept. 12, 2025). *Garcia Cortes v. Noem et al.*, No. 1:25-cv-02677-CNS, 2025 WL 2652880 (D. of Colo. Sept. 16, 2025); *Salazar v. Dedos*, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Maldonado-Vazquez v. Freeley*, 2025 WL 2676082 (D. Nev. Sept 17, 2025); *Hassan v. Crawford*, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Beltran-Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Chafla et al. v. Scott, et al.*, 2:25-cv-00437-SDN, 2025 WL 2688541 (D. of Maine Sept. 21, 2025); *Campos-Leon v. Forestal*, 2025 WL 2694763 (S.D. Ind. Sept 22, 2025); *Lepe v. Andrews*, --- F.Supp.3d ----, No. 1:25-cv-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, --- F.Supp.3d ---, 2025 WL

I.      **Factual Background**

A.  **Immigration Detention's Legal Framework**

This case concerns two provisions of the INA: 8 U.S.C. § 1226(a) and § 1225(b). The distinction between them determines whether a noncitizen can be released on bond or is subject to mandatory detention. Noncitizens subject to § 1226(a) face *discretionary* detention. *See* 8 U.S.C. § 1226(a)(1). These noncitizens can seek a "custody redetermination," i.e., a bond hearing, before an immigration judge (IJ) to present evidence that they are neither a flight risk nor a danger. *See generally Matter of Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006). By contrast, people detained under § 1225(b) are subject to *mandatory* detention. *See Jennings*, 583 U.S. at 288; 8 U.S.C. § 1182(d)(5).

These two provisions reflect immigration law's distinction between noncitizens arrested *after entering* the country (§ 1226) and those arrested *while arriving in* the country (§ 1225). Prior to 1996 Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), the statutory authority for custody was 8 U.S.C. § 1252(a) (1994), authorizing detention during "deportation" proceedings and release on bond. Those "deportation" proceedings governed the detention of anyone in the United States, regardless of manner of entry. IIRIRA maintained that authority for detention and release on bond at 8 U.S.C. § 1226(a). *See* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (explaining the new § 1226(a) "restate[d] the current provisions in [then 8 U.S.C. § 1252(a)] regarding the authority … to … detain, and release on bond…"). The IIRIRA also

---

2712427 (N.D. Iowa Sept. 23, 2025); *Rivera Zuma v. Bondi, et.al.*, No. 25-cv-14626 (KSH) (D. NJ. Sept. 26, 2025); *Flores v. Noem et. al.*, 5:25-cv-02490-AB-AJR (C.D.Ca. Sept. 29, 2025); *Alves da Silva*, 25-cv-284-LM-TSM (D.NH Sept. 29, 2025).

enacted new mandatory detention (without bond) provisions for people apprehended on arrival at 8 U.S.C. § 1225. *See Jennings*, 583 U.S. at 303.

In implementing the IIRIRA's detention authority, the then-INS clarified that people entering the U.S. without inspection and who were *not* apprehended while "arriving" would continue to be detained under § 1226(a) (formerly § 1252(a)) with access to bond. 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Inadmissible [noncitizens], except for arriving [noncitizens], have available to them bond … This procedure maintains the status quo.").

**B.  Defendants' New Illegal Mandatory Detention Policy**

Since IIRIRA's passage, Defendants applied § 1226(a) to people arrested in the interior after entry without inspection. Defendants switched course and now insist that § 1225(b)(2)(A) requires incarceration of *all* persons who entered the U.S. without inspection, regardless of where they were arrested or how long they have resided in the country. The change began at the Tacoma Immigration Court where IJs began denying bond to everyone who entered without inspection. *See Rodriguez-Vazquez*, 779 F. Supp. at 1244. Then, on May 22, 2025, the Board of Immigration Appeals ("BIA") issued an unpublished decision affirming one Tacoma IJ's decision denying bond pursuant to § 1225(b)(2)(A).

After the unpublished BIA decision, in July 2025, DHS "in coordination with the [DOJ]" issued a memo stating "effective immediately, it is the position of DHS" that anyone who entered without inspection is "subject to detention under [8 U.S.C. § 1225(b) and may not be released from ICE custody … ." According to DHS, noncitizens are now "ineligible for a [bond] hearing … and may not be released" during removal proceedings.[2] The BIA published a precedential

---

[2] Plaintiff Ex. 1, "Interim Guidance Regarding Detention Authority for Applicants for Admission."

decision finding the same on September 5, 2025. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). IJs at the Aurora Facility are now required to adopt this illegal interpretation of the INA's detention scheme. *Id.*

### C. Mr. Nava Hernandez is Ideally Qualified for Bond

Mr. Nava Hernandez is detained solely because of Defendants' new policy. He has lived in the United States for over twenty years. He lives with family and is engaged to a U.S. citizen. He has full-time employment and is the main breadwinner for his family. He has no disqualifying criminal contacts with law enforcement.  In short, he is an ideal candidate for bond.

ICE initiated removal proceedings against Mr. Nava Hernandez in 2025 pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) for being present without inspection.[3] Mr. Nava Hernandez moved for a custody redetermination hearing on September 25, 2025. On October 1, 2025, the IJ ruled that because Mr. Nava Hernandez entered without inspection, he was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)].[4]

## II.    Legal Standard for Granting Preliminary Relief

Plaintiff shows he is entitled to preliminary relief as (1) he is likely to succeed on the merits; (2) he will suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003).

---

[3] Plaintiff Ex. 2, Mr. Nava Hernandez's Notice to Appear, alleging entry without inspection in 2004.

[4] Plaintiff Ex. 3, EOIR Decision, 10/1/2025, "Respondent entered without inspection and is considered an applicant for admission. He is therefore subject to mandatory detention pursuant to INA section [8 U.S.C. § 1225(b)].  See Matter of Yajure Hurtado, 29 I& Dec. 216 (BIA 2025)."

### III.     Legal Argument – The Court Should Order Preliminary Relief

### A.  Mr. Nava Hernandez is Likely to Succeed on the Merits

Defendants' policy violates the INA. As the Supreme Court explained, § 1225 is concerned "primarily [with those] seeking entry," i.e., cases "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 297 & 287. In contrast, § 1226 applies to people who, like Plaintiff, are "already in the country" and are detained "pending the outcome of removal proceedings." *Id.* at 289. The INA's plain text, canons of statutory construction, the statutes' legislative history, the implementing regulations, and decades of agency practice all support this conclusion. The Federal Courts agree. *Supra* fn. 1.

### 1.  The text of § 1226(a) and canons of statutory construction demonstrate Plaintiff is entitled to a bond hearing.

Application of § 1226(a) does not turn on whether a person was previously admitted to the country. The plain text of 8 U.S.C. § 1226(a) includes people who entered the United States without inspection. 8 U.S.C. § 1226(c)(1)(A), (D), (E). Section 1226(a), the INA's "default" detention authority, *Jennings*, 583 U.S. at 281, applies to people detained "pending a decision on whether the [noncitizen] is to be removed," 8 U.S.C. § 1226(a). As the statute provides, this language includes both (1) people like Mr. Nava Hernandez who entered without inspection, were never formally admitted to the country, and thus are charged as "inadmissible" under § 1182(a)(6)(A)(i), and (2) people who were admitted and are charged as "deportable." *See id.* § 1229a(a)(3) (removal proceedings "determine[e] whether a [noncitizen] *may be admitted* to the [U.S.] or, if the [noncitizen] has been so admitted, removed from the [U.S.]") (emphasis added).

The statute's structure makes this clear. Subsection 1226(a) provides the right to bond. Subsection 1226(c) then carves out discrete categories of noncitizens subject to mandatory detention due to criminal contacts. *See*, *e.g.*, *id*. § 1226(c)(1)(A), (D), (E). These carve-outs include noncitizens inadmissible for entering without inspection *and* who meet certain other crime-related criteria. *See id*. § 1226(c)(1)(E). Because § 1226(c)'s exception expressly applies to people who entered without inspection, it reinforces the default rule: § 1226(a)'s general detention authority otherwise applies to people such as Mr. Nava Hernandez. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). Recent statutory amendments do the same.

Congress made significant changes to § 1226 in January of this year. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (LRA). These amendments make people charged under § 1182(a)(6)(A)(i) for entering without inspection or (a)(7) for lacking valid documentation *and* who have had certain criminal encounters subject to mandatory detention under § 1226(c). 8 U.S.C. § 1226(c)(1)(E). By including such individuals under § 1226(c), Congress expressly reaffirmed that § 1226(a) covers persons charged under § 1182(a)(6)(A) or (a)(7). "[W]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F.Supp.3d at 1256-57 (quoting *Shady Grove*, 559 U.S. at 400). *See also Gomes*, 2025 WL 1869299, *6; *Diaz Martinez*, 2025 WL 2084238, *7.

Several canons of interpretation reinforce this understanding. First, is the canon against rendering statutory language superfluous. *See*, *e.g.*, *Clark v. Rameker*, 573 U.S. 122, 131 (2014) ("a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous," internal citations omitted). Defendants' position does just that. As the *Rodriguez Vazquez* court explained, this is so because if "Section 1225 … and its mandatory

detention provisions apply to all noncitizens who have not been admitted, then it would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez Vazquez*, 779 F.Supp.3d at 1258 (citation modified).

Second, "when Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Estrada v. Smart*, 107 F.4th 1254, 1268 (10th Cir. 2024) (cleaned up). That presumption applies here, given LRA's amendments to § 1226. *See Rodriguez Vazquez*, 779 F.Supp.3d at 1259 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)). LRA's amendments explicitly provide that § 1226(a) covers people like Plaintiff. This is because the "specific exceptions [in the LRA] for inadmissible noncitizens who are arrested, charged with, or convicted of the enumerated crimes logically leaves those inadmissible noncitizens *not* criminally implicated under Section 1226(a)'s default rule for discretionary detention." *Id*. 1259 (emphasis in original, citation modified). *See also*, *e.g.*, *Diaz Martinez*, 2025 WL 2084238, at *7 ("if, as the Government argue[s], … a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 [LRA] amendment would have no effect").

Finally, "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative construction," courts "generally presume[] the new provision should have been understood to work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) (citation modified). This canon also supports Plaintiff's position because "Congress adopted the new amendments to Section 1226(c) against the backdrop of decades of post-IIRIRA agency practice applying discretionary detention under Section 1226(a) to inadmissible noncitizens such as [Plaintiffs]." *Rodriguez Vazquez*, 779 F.Supp.3d, at 1259.

2.  **The statutory structure of § 1225(b)(2), the textual limitations of § 1225(b)(2), and canon against superfluity further demonstrate that § 1226(a), not § 1225(b)(2), applies to Plaintiff.**

Section § 1225's structure also supports § 1226(a) applying to Plaintiff. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (citations omitted); *see also Biden v. Tex.*, 597 U.S. 785, 799-800 (2022) (interpreting INA).

The Supreme Court has described the structure of § 1226 and § 1225 as distinguishing between the two basic groups of noncitizens. Section 1226(a) applies to those who are "already in the country" and are detained "pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. By contrast, § 1225(b)(2) mandatory detention applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Id.* at 287. The whole purpose of § 1225 is to define *how* DHS inspects, processes, and detains people at the border. *See id.* at 297 ("[Section] 1225(b) applies primarily to [noncitizens] seeking entry into the [U.S.] …"). *See also* H.R. Rep. No. 104-469, pt. 1, at 157-58, 228-29 (explaining the purpose of § 1225).

Section 1225's text reinforces the two sections' structure and reflects its limited temporal scope. To begin, § 1225 concerns the "inspection" and "expedited removal of inadmissible arriving [noncitizens]." 8 U.S.C. § 1225. For example, § 1225(b)(1) encompasses only "inspection" of certain "arriving" noncitizens, and only those who are "inadmissible" for having misrepresented information or lacking entry documents.

Section 1225(b)(2) is similarly limited to people applying for admission on arrival, but whom (b)(1) does not cover. The title explains that it addresses "[i]nspection of other [noncitizens]." The subsection further specifies it applies only to "applicants for admission" (defined at § 1225(a)(1)) who "*seek[] admission.*" By stating § 1225(b)(2) applies only to those "seeking admission," Congress confirmed it did not intend to sweep up those who previously entered and began residing in the United States. A commonsense example clarifies the point:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point – one would say they had entered unlawfully but now seek a lawful means of remaining there.

*Lopez Benitez*, 2025 WL 2267803, *7. *See also* H.R. Rep. No. 104-469, pt. 1, at 157-58, 228-29; H.R. Rep. No. 104-828, at 209.

"This active construction of the phrase 'seeking admission'" accords with the plain language in § 1225(b)(2)(A) by requiring that a person be an "applicant for admission" and "also [be] *doing* something" to obtain authorized entry. *Diaz Martinez*, 2025 WL 2084238, at **6-7 (emphasis in original); *see also Lopez Benitez*, 2025 WL 2267803, at *7 (this is the "plain, ordinary meaning" of "seeking admission"). The statute's temporal focus on people "arriving" is evident in other respects too. Section 1225(b)(2)(C) addresses "[t]reatment of [noncitizens] *arriving* from contiguous territory" (emphases added). Section § 1225's focus is on people entering the U.S.

Respondents' reading of § 1225 would also render significant portions of § 1225 meaningless. Several requirements must be met for § 1225(b)(2)'s mandatory detention regime to apply; namely, (1) an "examining immigration officer" (2) must conclude during an "inspection"

(3) of an "applicant for admission" (4) who is also "seeking admission" (5) that the person "is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Defendants' interpretation of § 1225 reads out three of those five requirements.

First, it makes superfluous the requirements that the "examining immigration officer" conduct an "inspection." *Jimenez*, 2025 WL 2639390 at *7. "[E]xamination is not an unbound concept. Rather, it is the specific legal process one undergoes while trying to enter the country." *Id.* (citations omitted). The regulations make that plain. 8 C.F.R. § 235.1(a) (noting that "scope of examination" occurs while on seeks to "enter the United States" "at a U.S. port-of-entry . . ."). Nor is the inspection requirement untethered to entry to the United States. *See* 8 U.S.C. § 1225(a)(3) ("All [noncitizens] who are applicants for admission or otherwise seeking admission or readmission *to or transit through the United States* shall be *inspected* by immigration officers") (emphasis added). Defendants' interpretation renders both the examining immigration officer and inspection requirements superfluous.

Second, it renders superfluous §1225(b)(2)(A)'s requirement that the noncitizen be "seeking admission." *Jimenez*, 2025 WL 2639390, at *8. The statute defines admission to mean "the *lawful entry* of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). "While an applicant for admission has not been 'admitted' to the United States, it does not follow that an applicant for admission continues to be actively seeking . . . lawful entry." *Jimenez*, 2025 WL 2639390, at *8 (citation omitted). "If as the Government argues, all applicants for admission are deemed to be 'seeking admission' for as long as they remain applicants, then the phrase 'seeking admission' would add nothing to the provision" in § 1225(b)(2)(A). *Salcedo Aceros*, 2025 WL 2637503, at

*10. Defendants' position would similarly "read the word 'entry' out of the definitions of 'admitted' and 'admission.'" *Chafla*, 2025 WL 2688541, at *6.

The implementing regulation for § 1225(b) supports Plaintiff's reading, noting that §1225(b) applies to "any *arriving* [noncitizen] who appears to the inspection officer to be inadmissible." 8 C.F.R. § 235.3 (emphasis added). "The regulation thus contemplates that 'applicants *seeking admission*' are a subset of applicants 'roughly interchangeable' with "arriving [noncitizens]." *Salcedo Aceros*, 2025 WL 2637503, at *10 (quoting *Martinez*, 2025 WL 2084238, at *6); *See* 8 C.F.R. § 1.2 (defining an arriving noncitizen as an applicant for admission "coming or attempting to come into the United States at a port-of-entry").

While Mr. Nava Hernandez is not lawfully admitted, he is not actively "seeking admission i.e., seeking lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Jimenez*, 2025 WL 2639390, *8. Defendants' reading of the statute is wrong.

### 3. The legislative history further supports Plaintiff's argument.

IIRIRA's legislative history also supports the conclusion that § 1226(a) applies to Plaintiff. In the IIRIRA, Congress focused on recent arrivals who lacked documents to remain. *See* H.R. Rep. No. 104-469, pt. 1, at 157-58, 228-29. Notably, Congress said nothing about subjecting *all* people present in the U.S. to mandatory detention.

Before the IIRIRA, people like Plaintiff were not subject to mandatory detention under *any* theory. *See* 8 U.S.C. § 1252(a) (1994). Had Congress intended a monumental shift in immigration law, it would have said so. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (finding "implausible that Congress would give to the [agency] through these modest words [such] power"). In fact, Congress said the *opposite*: the new § 1226(a) just "restates the current provisions

… regarding the authority … to arrest, detain, and release on bond a[] [noncitizen]." H.R. Rep. No. 104-469, pt. 1, at 229. "Because noncitizens like [Plaintiff] were entitled to discretionary detention under [§] 1226(a)'s predecessor statute and Congress declared its scope unchanged … this background supports [Plaintiff's] position that he too is subject to discretionary detention." *Rodriguez Vazquez*, 779 F.Supp.3d at 1260.

### 4. Defendants' policies violate longstanding EOIR regulations.

Defendants' view violates EOIR's regulations. Following the IIRIRA, EOIR explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted ... will be eligible for bond." 62 Fed. Reg. at 10323. In the following decades, the relevant regulations remain unchanged. *Compare* 63 Fed. Reg. 27441, 27448 (May 19, 1998), *with* 8 C.F.R. § 1003.19(h)(2). Indeed, the regulation explicitly limits an IJ's bond jurisdiction under certain scenarios, none of which involve applicants for admission already in the United States. 8 C.F.R. § 1003.19(h)(2). Regulatory "guidance and the agency's subsequent years of unchanged practice is persuasive." *Rodriguez Vazquez*, 779 F.Supp.3d at 1261. "When an agency claims to discover in a long-extant statute an unheralded power … [courts] greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 574 U.S. 302, 324 (2014).

### B. Plaintiff Faces Imminent, Irreparable Harm

Defendants incarcerate Plaintiff in jail-like conditions.[5] "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972). "It is hard to adequately state the significance of the potential injury" to a person who is illegally incarcerated, as one cannot

---

[5]  *See L.G. v. Choate*, 744 F. Supp. 3d 1172, 1182 (D. of Colo. 2024) (citation omitted).

"be given back" any day "he has spent in prison." *Case v. Hatch*, No. 08-CV-00542 MV/WDS, 2011 WL 13285731, *5 (D. N.M. May 2, 2011). Detention causes "potentially irreparable harm every day [one] remains in custody." *Rodriguez Vazquez*, 779 F.Supp.3d at 1262. This injury is "certain, great, actual, and not theoretical." *See Heideman v. S. Salt Lake City, Utah*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citations omitted). Courts routinely find far less weighty interests justify preliminary relief. *Ohio Oil Co. v. Conway*, 279 U.S. 813 (1929) (tax payment); *RoDa Drilling v. Siegal*, 552 F.3d 1203, 1210-11 (10th Cir. 2009) (control of real property); *Bray v. QFA Royalties, LLC*, 486 F.Supp.2d 1237 (D. Colo. 2007) (terminating sandwich shop franchise agreements).

### C.  Balancing the Equities and Public Interest Weigh Heavily in Favor of Relief

The balance of equities and the public interest factors merge in cases against the government. *See*, *e.g.*, *Nken v. Holder*, 556 U.S. 418, 436 (2009). The government cannot claim injury from an order enjoining unlawful action. *See*, *e.g.*, *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *Wages & White Lion, Inv., L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021) ("There is generally no public interest in … unlawful agency action"). Here, requiring the government to return to its prior practice does not injure Defendants. Nondetained people in removal proceedings almost uniformly attend their court dates.[6] An IJ will only release someone on bond after satisfying an IJ that they are not a flight risk. *Matter of Guerra*, 24 I&N Dec. at 38. Thus, "[t]he harm to the government is minimal." *Rodriguez Vazquez*, 779 F.Supp.3d at 1262.[7]

---

[6] Ingrid Eagly, Esq. & Steven Shafer, Esq., *Measuring In Absentia Removal in Immigration Court* SPECIAL REPORT BY AMERICAN IMMIGRATION COUNCIL, Jan. 2021 (available at: https://www.americanimmigrationcouncil.org/wpcontent/uploads/2025/01/measuring_in_absentia_in_immigration_court.pdf)

[7] The Court should not require a Rule 65 bond. Courts have "wide discretion in the matter of

**IV.     Conclusion**

Accordingly, the Court should grant a temporary restraining order (or preliminary injunction) requiring either Plaintiff's release from custody, or that Defendants provide a bond hearing within 7 days. The Court should further enjoin the Defendants from transferring Mr. Nava Hernandez outside the District of Colorado.

Dated: October 2, 2025

Respectfully submitted,

<u>/s/ Sarah Faville</u>
Sarah Faville
Connor Gleason
Hans Meyer
The Meyer Law Office
1547 Gaylord St.
Denver, CO 80206
(303) 831 0817
sarah@themeyerlawoffice.com
conor@themeyerlawoffice.com
hans@themeyerlawoffice.com
ATTORNEYS FOR PLAINTIFF-PETITIONER

---

requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964). There is no likelihood of harm to the government in this case. The requested relief only preserves the status quo: a bond hearing. The purpose of any security is satisfied by the bond required in immigration court. In the alternative, the Court should require a nominal bond. *See Andujo v. Longshore*, 14-CV-1532-REB, 2014 WL 2781163 (D. Colo. June 19, 2014).

## <u>CERTIFICATE OF CONFERRAL</u>

I hereby certify that consistent with D. Colo. Local Rule 7.1, before filing this motion, I conferred

with counsel for Defendants-Respondents, Kevin Traskos, United States Attorney, US Attorney's

Office for the District of Colorado, regarding the relief requested herein. Defendants-Respondents

are evaluating their response.

_/s/_ Sarah Faville

**Attorney for Plaintiff-Petitioner**

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah Faville hereby certify that on October 2, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system. I, Ana Loera, hereby certify that I mailed a hard copy of the document to the individuals identified below pursuant to Fed.R.Civ.P. 4 via certified mail on October 2, 2025.

Brad Leneis
Assistant U.S. Attorney
U.S. Attorney's Office
District of Colorado
1801 California Street, Ste. 1600
Denver, CO 80202

Pam Bondi
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

And to: Kristi Noem and Todd Lyons, DHS/ICE, c/o:

Office of the General Counsel
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave., SE
Washington, D.C. 20528

And to:

Juan Baltasar
GEO Group, Inc.
3130 N. Oakland Street
Aurora, CO 80010

And to:

Robert Guadian
Denver ICE Field Office
12445 E. Caley Ave.
Centennial, CO 80111

17

/s/ Sarah Faville
Sarah Faville, Esq.
Conor T. Gleason, Esq
Hans Meyer, Esq.
Meyer Law Office, P.C.
1547 Gaylord St.
Denver, CO 80206
T: (303) 831 0817
conor@themeyerlawoffice.com
hans@themeyerlawoffice.com

/s/ Ana Loera
Paralegal
Meyer Law Office
1547 Gaylord St.
Denver, CO 80206
Phone: 303.831.0817
ana@themeyerlawoffice.com