IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-03094-CNS

JAVIER NAVA HERNANDEZ,

    Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
ROBERT GAUDIAN, Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, in his official capacity,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity,
TODD LYONS, Acting Director of Immigration and Customs Enforcement, in his official capacity, and
PAMELA BONDI, Attorney General, U.S. Department of Justice, in her official capacity,

    Respondents.

## ORDER

Before the Court is Petitioner Javier Nava Hernandez's Verified Petition for Writ of Habeas Corpus, ECF No. 1, and Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction, ECF No. 6. As the briefing demonstrates that Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing regarding Petitioner's challenge, *see* 28 U.S.C. § 2243, and, for the reasons outlined below, the Court GRANTS IN PART the petition. Because Petitioner's motion seeks relief on

1

substantially similar grounds, the Court DENIES as moot the motion. In doing so, the Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 6, 19, 22.

## I.   ANALYSIS

In his petition, Petitioner requests that the Court "[i]ssue a writ of *habeas corpus* requiring Respondents to either release [him] immediately or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days[.]" ECF No. 1 at 15. His motion seeks similar relief. *See* ECF No. 6 at 16. The argument underlying both requests is the same: Petitioner, who is not currently subject to a final removal order, is being improperly detained and denied the opportunity for a bond hearing due to Respondents' recent reinterpretation of 8 U.S.C. § 1225, which provides for the mandatory detention of noncitizens who are applicants for admission to the United States. *See* ECF No. 1 ¶¶ 2–4; ECF No. 6 at 5–6. Petitioner contends that because he has lived in the United States for over 20 years, he is not an "applicant for admission" under § 1225 and should instead be detained under 8 U.S.C. § 1226(a), which applies to all persons "charged as inadmissible for entering without inspection" pending a removal decision. *See* ECF No. 1 ¶¶ 32–36; ECF No. 6 at 2–3. Petitioner argues that absent Respondents' recent, erroneous reinterpretation, he would be detained pursuant to § 1226(a), under which detention is discretionary, and that he is entitled to a bond hearing. *See* ECF No. 1 ¶¶ 32–36, 40.

Respondents agree that the arguments raised and relief sought in both the petition and the motion are the same, *see* ECF No. 16 at 1–2, and they address both in a consolidated brief, ECF No. 19. In the consolidated response, Respondents advance four

primary arguments.[1] *First*, the Court "lacks jurisdiction to hear Petitioner's challenge to the statutory basis for his detention." ECF No. 19 at 6. *Second*, even if the Court has jurisdiction, it should find that Petitioner is an "applicant for admission" under § 1252(b)(2)(A) and is properly subject to the statute's mandatory detention provisions. *Id.* at 9. *Third*, denying Petitioner a bond hearing does not violate Petitioner's due process rights. *Id.* at 19. And *fourth*, that Petitioner is not entitled to injunctive relief. *Id.* at 20. The Court considers these arguments in turn.

### A. Jurisdiction

As a threshold matter, Respondents argue that this Court lacks jurisdiction to review Petitioner's claims because of the jurisdictional bar imposed by § 1252(b)(9) and § 1252(a)(5). *See* ECF No. 19 at 6–8. Specifically, Respondents contend that because "[t]he decision to detain Petitioner under § 1225(b)(2)(A) is a question of law arising from his removal proceedings," the Court's consideration of this decision is barred by § 1252(b)(9) and § 1252(a)(5) which, when taken together, deny the Court jurisdiction to review "any removal-related activity," *id.* at 7(citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). Outlined below, the Court disagrees with Respondents.

As a general matter, district courts have authority to grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress imposes jurisdictional bars on a district court's ability to review certain immigration-related

---

[1] In the consolidated response, Respondents also request that this Court lift its order enjoining Respondents from transferring Petitioner outside the District of Colorado, ECF No. 13. ECF No. 19 at 22. Respondents have failed to persuade the Court that such relief is appropriate at this time.

decisions, the limits imposed by § 1252(b)(9) and § 1252(a)(5) concern a court's ability to review a final order of removal. *See* 8 U.S.C. § 1252(b)(9) (limiting judicial review to "a final order" of "any action taken or proceeding brought to remove a [noncitizen]"); 8 U.S.C. § 1252(a)(5) (requiring that "a petition for review" of an "order of removal" be filed "with an appropriate court of appeals"). Respondents do not contend that Petitioner has received a final order of removal and, indeed, appear to concede that no such order has been issued. *See* ECF No. 19 at 22 ("*Until the [immigration judge] issues a final order of removal*, Petitioner cannot be removed from the United States.") (emphasis added).

The lack of a formal order of removal notwithstanding, Respondents argue that these jurisdictional bars still apply because Petitioner "challenges the statutory authority pursuant to which he is being detained pending his removal." *Id.* at 8. The Court is not persuaded by Respondents' borderline frivolous argument, given that relevant Supreme Court precedent squarely supports the opposite conclusion, at least with respect to § 1252(b)(9). *See Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that "§ 1252(b)(9) does not present a jurisdictional bar" to reviewing detention-related claims when noncitizens "are not asking for review of an order of removal" or "challenging the decision to detain them in the first place," but instead are "challenging the decision to . . . deny them bond hearings") (citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (cleaned up)); *see also Romero v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2403827, at *4 (D. Mass. Aug. 19, 2025) (concluding that *Jennings* "clearly demonstrate[s] that this Court has jurisdiction to determine what legal authority governed [the p]etitioner's detention and whether, as a result, [p]etitioner was entitled to a bond hearing"). And as noted above, because

4

Petitioner does not have a final order of removal, Respondents' argument that § 1252(a)(5) presents a jurisdictional bar fares no better under Tenth Circuit decisional law. *See Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (concluding that § 1252(a)(5) does "not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention" and affirming district court's finding that it had jurisdiction to review a habeas petition challenging "DHS's continued detention [of petitioner] without bond or without providing a bond hearing").

The Court is also not persuaded by Respondents' contention that Petitioner's challenge to his detention "aris[es] from . . . removal-related activity." ECF No. 19 at 7. Several courts, including this Court and others in this judicial district, have rejected similar arguments, and determined that claims challenging the basis of an immigration detainee's mandatory detention "are legal in nature and challenge specific conduct unrelated to removal proceedings." *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880, at *2 (D. Colo. Sept. 16, 2025); *see also Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023 ("Congress did not intend the zipper clause [in § 1252(b)(9)] 'to cut off claims that have a tangential relationship with pending removal proceedings'" because "[a] claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings.") (citations omitted)); *Jose J.O.E. v. Bondi*, No. 25-cv-3051 (ECT/DJF), 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (concluding that "[§§] 1252(a)(5) and (b)(9) do not deprive [a c]ourt of jurisdiction" where petitioner "does not seek review of a removal order" and "[n]o removal order has issued") (citing *Jennings*, 583 U.S. at 294–95); *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720-

RMR, 2025 WL 2962908, at *3 (D. Colo. Oct. 17, 2025) (rejecting similar arguments as those presented here and determining that "Sections 1252(a)(5) and (b)(9) do not deprive the Court of jurisdiction"); *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *2–3 (D. Colo. Oct. 22, 2025) (concluding that neither § 1252(a)(5) nor § 1252(b)(9) bar courts from considering whether a petitioner is detained pursuant to the proper legal authority). Accordingly, the Court concludes that Sections 1252(a)(5) and (b)(9) do not deprive the Court of jurisdiction here.

Having dispensed with Respondents' jurisdictional arguments, the Court turns to their challenges to the merits of Petitioners' claims.

### B. Petition for Writ of Habeas Corpus

As previewed above, the primary issue before the Court is whether Petitioner is properly held pursuant to § 1225(b)(2)(A)'s mandatory detention requirement, or whether § 1226(a), which would provide Petitioner the opportunity for a bond hearing, should apply. "The INA contemplates two detention regimes for noncitizens pending removal proceedings." *Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729, at *3 (D.N.M. Sept. 17, 2025). Section 1225 provides that "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Absent the application of certain exceptions in §§ 1225(b)(2)(B) and (C) not relevant here, § 1225 mandates detention without the opportunity for a bond

6

hearing for the noncitizens to whom it applies. *Salazar*, 2025 WL 2676729, at *3 (citing *Jennings*, 583 U.S. at 297).

Section 1226(a), by contrast, provides that "[a noncitizen] *may* be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Subject to some limited exceptions, *see, e.g.*, § 1226(c), § 1226(a) provides the Attorney General with discretion to release a noncitizen on bond pending a removal decision. 8 U.S.C. § 1226(a)(1)–(2). Federal regulations also provide that noncitizens detained pursuant to § 1226(a) are entitled to individualized bond hearings. *See Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). As in other cases considering similar issues, "[g]iven that detention under § 1225(b)(2) is essentially mandatory and that detention under § 1226(a) is largely discretionary, it follows that whichever statute [Petitioner] is subject to is potentially dispositive here." *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), --- F.Supp.3d ----, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025).

Petitioner argues that § 1226(a) should apply here, and he requests that the Court either release him or order that Respondents provide him a bond hearing within seven days. ECF No. 1 at 15. Petitioner contends that because he has been present in the United States for over 20 years, he is not "seeking admission" to the country and should not be subject to § 1225's mandatory detention requirement. *Id.* ¶¶ 35–36. In support, Petitioner argues that the plain language of the Immigration and Nationality Act (INA), its related regulations, legislative history, and the government's past practices concerning the statutes at-issue all support his position. *Id.* ¶ 31. In response, Respondents contend

that the mandatory detention of noncitizens like Petitioner is consistent with a "plain reading of the text" of § 1225(b)(2)(A) and that Petitioner is properly subject to mandatory detention as an "applicant for admission." ECF No. 19 at 9. As noted above, the Court joins the chorus of courts nationwide and rejects the government's arguments. Below, the Court considers the plain language, legislative history, and past practices and finds that each support Petitioner's request for relief.

### 1. The Plain Text of § 1225 and § 1226

Petitioner argues that he should not be subject to § 1225(b)(2)(A)'s mandatory detention provision because it applies only to a subset of noncitizens who (i) are "*arriving*" or "*recently entered* in the United States," (ii) were "encountered at or near the border," and (iii) are "seeking admission" into the country. ECF No. 1 ¶ 35. Petitioner contends that those requirements do not apply to him because he "'arrived' in the country long ago," *id.* ¶ 36, and argues that he should instead be detained pursuant to § 1226(a)'s "default rule," which provides for the discretionary, pre-removal detention of all persons charged as inadmissible for entering the United States without inspection, and which provides detainees with the opportunity for a bond hearing, *id.* ¶¶ 32, 33, 36. Rejecting Petitioner's reading as nonsensical, Respondents argue that § 1225's plain text clearly applies to all "applicants for admission," which includes noncitizens just arriving in the U.S., as well as those, like Petitioner, who entered the United States without inspection in the past and continued living here. ECF No. 19 at 9–10. Respondents argue that in light of this definition, Petitioner is properly considered an "applicant for admission" and detained under § 1225(b)(2)(A). *Id.* at 10.

The Court begins with the statutory language, *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 613 (10th Cir. 2018), and finds that the plain text and structure of § 1225 and § 1226 support a determination that § 1225(b)(2)(A)'s provision for mandatory detention "does not apply to someone like [Petitioner], who has been residing the United States for more than two years," *Lopez Benitez*, 2025 WL 2371588, at *3; *see also, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States."); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *7–8 (D. Mass. July 24, 2025), *appeal docketed*, No. 25-1902 (1st Cir. Sep. 29, 2025) (concluding that the textual "tension between sections 1225 and 1226 motivates the conclusion that they apply to different classes of aliens," and that given the "line historically drawn between these two sections, making sense of their text and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country'") (citations omitted)); *Mendoza Gutierrez*, 2025 WL 2962908, at *5 ("[Section] 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [Mr. Gutierrez], who has been residing in the United States for more than two years." (collecting cases)); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390, at *8 (D.N.H. Sept. 8, 2025) ("Because § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot

9

apply to Jimenez, who has already entered the country and has been residing here for over two years.").

Section 1225 provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an *applicant for admission*." 8 U.S.C. § 1225(a)(1) (emphasis added). Section 1225(b)(2)(A), which is invoked to justify Petitioner's mandatory detention, states that "[s]ubject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In contrast, § 1226, which also authorizes the detention of certain noncitizens, states that "[o]n a warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General (1) may continue to detain the arrested alien;" or "(2) *may release* the alien." 8 U.S.C.A. § 1226(a).

Respondents argue that because all noncitizens like Petitioner who are already present in the country are "applicants for admission" under § 1225(a)(1), those same individuals "are also 'seeking admission" by virtue of that status," such that § 1225(b)(2)(A) applies. *See* ECF No. 19 at 11. The statute's plain text suggests otherwise. "[F]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for

admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez*, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (quoting § 1225(b)(2)(A)). For a noncitizen to be deemed "seeking admission," they must be currently taking active steps or some kind of present-tense action to seek lawful entry into the U.S. *Id.* at *6 ("[T]he phrase 'seeking admission' is undefined in the statute but necessarily implies some sort of present-tense action."); *see also Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("the term "seeking" [in § 1225(b)(2)(A)] . . . implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection"); *Loa Caballero*, 2025 WL 2977650, at *6 ("The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States. The use the present participle in § 1225(b)(2)(A) 'implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'") (citation omitted). Fatally, Respondents do not contend that Petitioner here is taking any such active steps.

Courts have found that "[n]oncitizens who are just 'present' in the country . . ., who have been here for years upon years and never proceeded to obtain any form of citizenship[,] . . . are not 'seeking' admission" under § 1225(b)(2)(A). *Lopez-Campos*, 2025 WL 2496379, at *6. This interpretation is also supported by the Supreme Court, which succinctly outlined the differing circumstances governing the application of § 1225 and § 1226:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under

11

§§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. 289 (emphasis added). Petitioner here, who has resided in the United States for over 20 years, undoubtably falls in the latter group.

Moreover, accepting Respondents' interpretation that "anyone falling within the category of 'applicants for admission' is deemed, as a matter of law, to be seeking admission," ECF No. 19 at 11, would require ignoring the fact that "the categories 'applicants for admission' and 'seeking admission' are not coterminous." *Romero v. Hyde*, Civil Action No. 25-11631-BEM, 2025 WL 2403827, at *10 (D. Mass. Aug. 19, 2025). "To be an 'applicant for admission,' one must be 'present in the United States' or otherwise "arriv[ing] in the United States." *Id.* (citing 8 U.S.C. § 1225(a)(1)); *see also Lopez-Campos*, 2025 WL 2496379, at *6 ("Noncitizens who are just 'present' in the country . . . for years upon years" may technically be considered an "applicant for admission" because they are "'a noncitizen present in the United States who has not been admitted,'" but "[this is] not interchangeable" with a determination that a noncitizen is "seeking admission"). "By contrast, one can 'seek admission' from anywhere in the world, 'for example, by applying for a visa at a consulate abroad.'" *Id.* (citing *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741 (BIA 2012)). Respondents' interpretation ignores this distinction.

Respondents also ignore the title of § 1225 ("Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing"), which is "especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates v. U.S.*, 574 U.S. 528, 552 (2015) (Alito, J., concurring). As Petitioner

12

notes, the reference to "arriving" individuals in § 1225's title "indicat[es] that the statute governs 'arriving' noncitizens, not those present already." ECF No. 22 at 5 (citing *Barrera v. Tindall*, 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D.Ky Sept. 19, 2025)) (citation omitted); *see also Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025) ("[T]he titles and headings of § 1225 repeatedly cabin its application to 'Inspections,' which, as petitioner convincingly argues, occur at ports of entry, their functional equivalent, or near the border.").

Despite the statute's plain language and clear Supreme Court precedent, Respondents level several additional arguments in an attempt to establish that Petitioner is properly detained pursuant to § 1225(b)(2)(A). For example, Respondents point to § 1225(b)(1)(A)(i) and § 1225(b)(1)(A)(iii)(II) as a demonstration of how § 1225's application is not limited to noncitizens arriving in the U.S. [2] *See* ECF No. 19 at 10. But contrary to Respondents' interpretation, those sub-sections are better understood as carve outs for the "certain other aliens" that do not fall into § 1225's otherwise general application to *arriving* citizens. 28 U.S.C. § 1225(b)(1). More convincing is Petitioner's interpretation that § 1225(b)(1)(A)(iii)(II)'s language explicitly limiting mandatory detention to noncitizens who have been in the U.S. for *less than two years* indicates that Congress did not intend for the same mandatory detention requirements to apply to individuals like

---

[2] Section 1225(b)(1)(A)(iii)(II) provides that:

> An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

13

Petitioner who have resided here for decades. ECF No. 22 at 5. Other courts in this judicial district agree. *See, e.g.*, *Mendoza Gutierrez*, 2025 WL 2962908, at *6 (rejecting an argument similar to the one presented by Respondents because it "seems to indicate that § 1225 would only apply to noncitizens who have not lived in the United States continuously for two years, and not to noncitizens who have lived in the United States continuously for over two years, let alone decades like Petitioner"); *Moya Pineda v. Baltazar, et al.*, 1:25-cv-02955-GPGTPO (D. Colo. Oct. 20, 2025), ECF 21 at 2, 3 (determining that petitioner, who has lived in the United States for "nearly twenty years" and "was not detained while attempting to enter the country . . . is not subject to § 1225(b)(2)(A)'s mandatory detention provision").

Respondents' other arguments fare no better. Specifically, Respondents contend that because § 1225(b)(2) is broader than § 1225(b)(1), § 1225(b)(2) should be read as a "catchall" covering all other applicants for admission, like Petitioner, not otherwise covered by § 1225(b)(1). ECF No. 19 at 10–11 (citing *Jennings*, 583 U.S. at 287). While it is true that "Section 1225(b)(2) is broader" than § 1225(b)(1), "that does not mean that § 1225(b)(2) applies to *all* other noncitizens in the United States who have not been admitted." *Mendoza Gutierrez*, 2025 WL 2962908, at *6 (emphasis added). Respondents' selective citation ignores the greater context from *Jennings*, cited above, which makes clear that § 1225(b)(2)s' "catchall" provision—and, in fact, all provisions of § 1225—apply to noncitizens "seeking admission into the country," as opposed to those who are "already in the country." *Jennings*, 582 U.S. at 289.

Finally, Respondents argue that Petitioner is properly detained subject to § 1225(b)(2)(A) and not § 1226(a) because even though "Section 1226(a)'s general detention authority . . . permits the issuance of warrants to detain aliens for their removal proceedings," it "does not displace the more specific provisions in § 1225 governing the detention of applicants for admission." ECF No. 19 at 13. Respondents argue that even though "§ 1225 is narrower in scope than § 1226" and "applies only to 'applicants for admission,'" this still includes Petitioner because he is a noncitizen "present in the United States who [has] not been admitted." *Id.* at 14 (citing 8 U.S.C. § 1225(a)(1)). For his part, Petitioner urges that § 1226(a) is actually the "default" rule for all noncitizens, like him, who are "pending a decision on whether [they are] to be removed." ECF No. 1 ¶ 32 (citations omitted). Petitioner argues that because § 1226 provides for the mandatory detention of certain groups of noncitizens, *see, e.g.*, 28 U.S.C. § 1226(c), noncitizens like him who do not fall within those specified groups are subject only to § 1226(a). *Id.*

The Court is persuaded by Petitioner's interpretation that §§ 1225(b)(2) and 1226 are mutually exclusive. A "noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *Lopez Benitez*, 2025 WL 2371588, at *4. Indeed, "if § 1225(b)(2) already mandated detention of any noncitizen who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." *Barrera*, 2025 WL 2690565, *4 (cleaned up). The Court declines to adopt Respondents' interpretation and—as Respondents acknowledge—the redundancy that would result from the same. *See* ECF No. 19 at 14.

15

### 2. Legislative History & Past Practices

In addition to the plain text, each party argues that the INA's legislative history and past enforcement of the at-issue statutes support their respective positions. The detention provisions in § 1226 and § 1225 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226(a) was also recently amended by the Laken Riley Act (LRA), Pub. L. No. 119-1, 139 Stat. 3 (2025). Respondents urge the Court to adopt their interpretation of § 1225 because failing to do so would frustrate Congress's purpose of enacting IIRIRA to resolve an "anomaly" in immigration law where noncitizens present in the U.S. "without inspection" were placed in deportation proceedings and permitted to request release on bond, while noncitizens "who presented themselves at a port of entry for inspection" were denied that opportunity. ECF No. 19 at 16 (citations omitted). Respondents cite to a House Judiciary Committee Report to support their contention that "before the IIRIRA, 'aliens who ha[d] entered without inspection [were] deportable under section [1251(a)(1)(B)],' but that after the IIRIRA 'such aliens will not be considered to have been admitted.'" *Id.* at 17 (citing H.R. Rep. No. 104-469, pt. 1, at 226 (1996)). Respondents argue that accepting Petitioner's interpretation of the INA's legislative history would undo the work that that IIRIRA was intended to fix. *Id.*

However, as Petitioner correctly notes, ECF No. 22 at 9, when Congress enacted the IIRIRA, it "did not fully disrupt the old system, including the system of detention and release" on bond, *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL

16

2637503, at *12 (N.D. Cal. Sept. 12, 2025) (quoting H.R. Rep. 104-469, 229). Respondents appear to concede this point. *See* ECF No. 19 at 17 (acknowledging that "the IIRIRA was intended to replace *certain aspects* of the current '"entry doctrine"'") (citing H.R. Rep. No. 104-469, pt. 1, at 225 (1996)) (emphasis added). According to the legislative record, "Section 236(a) [1226(a)] restates the current provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. REP. 104-469, 229. And as Respondents recognize, the pre-IIRIRA regime treated arriving noncitizens differently from those already present in the United States. ECF No. 19 at 17. "Congress' concern about adjusting the law in some respects to reduce inequities in the removal process did not mean Congress intended to entirely up-end the existing detention regime by subjecting *all* inadmissible noncitizens to mandatory detention." *Aceros*, 2025 WL 2637503, at *12 (citing *Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025)) (emphasis in original). Respondents cannot attempt to make such a "a seismic shift in the established policy and practice of allowing discretionary release under Section 1226(a) –the scope of which Congress did not alter." *Id.*

Some of the strongest evidence of the IIRIRA's intended purpose is its implementation and enforcement in the decades after its enactment. As Petitioner notes, the regulations promulgated in furtherance of the IIRIRA provide specific guidance regarding the detention of noncitizens already present in the country. *See* ECF No. 1 ¶ 22. These regulations make clear that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and

17

bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). This is further supported by contemporaneous agency action. Although the agency initially proposed an interim rule that all inadmissible noncitizens be ineligible for bond, that was ultimately revised, and "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not," a change that "maintain[ed] the status quo regarding release decisions for aliens in proceedings." 62 Fed. Reg. at 10323.

That those regulations were followed by immigration judges from 1997 until earlier this year is telling. It is only Respondents' recent reversal that sheds doubt on Petitioner's interpretation. Absent Respondents' sudden about-face, applying § 1225(b)(2)(A)'s mandatory detention provision to noncitizens present in the country for decades would not make sense. The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law.[3]

---

[3] *See, e.g.*, *Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *15 (D. Nev. Sept. 17, 2025) (explaining that Respondents' interpretation of § 1225 is "inconsistent with . . . decades of agency practice"); *Chang Barrios v. Shepley*, No. 1:25- cv-00406-JAW, 2025 WL 2772579, at *9 (D. Me. Sept. 29, 2025) ("[I]t would contravene decades of precedent to adopt the position that any noncitizen present in the country without admission is subject to mandatory detention without bond hearing, no matter how long that person has resided inside the United States . . . Until recently, the Executive Branch applied § 1226(a) to noncitizens without documentation already present in the United States."); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances.") (citation omitted).

### C. Due Process Violations

Petitioner brings a claim for a violation of his Fifth Amendment, arguing that placing him in detention "without providing him a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to Due Process." ECF No. 1 at ¶ 57. In response, Respondents argue that "Petitioner claims that he is entitled to a bond hearing as a matter of due process, but he does not explain why." ECF No. 19 at 19. But reviewing the petition in its entirety makes clear that the basis of Petitioner's due process claim is undoubtably the same set of facts underlying the rest of his petition—his mandatory detention under § 1225. *See generally* ECF No. 1. And for the reasons outlined above, the Court accepts that Petitioner has articulated a due process claim.

However, the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a). *See Buenrostro-Mendez*, 2025 WL 2886346, at *3, n.4. If Respondents fail to provide Petitioner with a bond hearing, Petitioner may renew his Fifth Amendment Due Process claim. *See, e.g.*, *Id.* at *3 n.4; *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *8 n.4 (E.D. Mich. Sept. 9, 2025).

## II. CONCLUSION

Having concluded that Petitioner has asserted viable claims against Respondents, the Court must now determine the appropriate remedy. *See Romero*, 2025 WL 2403827, at *13. Petitioner seeks an order of release, or in the alternative, an order compelling a bond hearing. *See* ECF No. 1 at 15. In the first instance, the Court agrees with Respondents that "Section 1226(a) does not require release—it provides DHS the

discretion to grant an alien release on bond." ECF No. 19 at 22; *see also Romero*, 2025 WL 2403827, at *13; *Garcia Cortes*, 2025 WL 2652880, at *5.

Accordingly, for the reasons stated above, the Court GRANTS Petitioner's Verified Petition for Writ of Habeas Corpus, ECF No. 1, and orders Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within SEVEN DAYS of the date of this Court's order. The Court also orders Respondents to file a status report within TEN DAYS of the date of this Court's order to certify compliance. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial. As Petitioner's Motion for Temporary Restraining Order and/or Preliminary Injunction, seeks the same relief set forth in his petition, ECF No. 6, it is DENIED AS MOOT.

DATED this 24th day of October 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge